# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| JERRY'S ENTERPRISES, INC., | Civil No.  14-1951 (JRT/JJK) |
| Plaintiff, | |
| | **MEMORANDUM OPINION** |
| v. | **AND ORDER** |
| U.S. SPECIALTY INSURANCE COMPANY, | |
| Defendant. | |

Richard D. Snyder, **FREDRIKSON & BYRON, PA**, 200 South Sixth Street, Suite 4000, Minneapolis, MN  55402, for plaintiff.

Douglas M. Mangel and Alexander R. Karam, **SHIPMAN & GOODWIN, LLP**, 1875 K Street Northwest, Suite 600, Washington, DC  20006, and Robert L. McCollum, **MCCOLLUM CROWLEY MOSCHET MILLER & LAAK, LTD**, 7900 Xerxes Avenue South, Suite 700, Minneapolis, MN 55431, for defendant.

Plaintiff Jerry's Enterprises, Inc. ("JEI") brings this breach of contract and declaratory judgment action against its liability insurance carrier, Defendant U.S. Specialty Insurance Company ("U.S. Specialty").  JEI settled a lawsuit brought against JEI and two members of its board of directors by a third, former member of the board of directors, Cheryl Sullivan, and her two daughters.  U.S. Specialty refused to indemnify JEI for the settlement or pay JEI's defense costs, explaining that Sullivan's claim fell under the "Insured vs. Insured" exception (also known as the Insured vs. Insured

exclusion) to JEI's liability insurance policy.  JEI filed this action against U.S. Specialty for breaching its contractual obligation to indemnify JEI.

This matter is now before the Court on the parties' cross-motions for summary judgment.  The Court concludes that the plain language of the insurance policy is unambiguous and that Cheryl Sullivan constitutes an "Insured Person" for the purposes of the Insured vs. Insured exception.  Further, the Court finds that she assisted her daughters in each of the claims they brought against JEI and two of its directors.  Accordingly, the Court concludes that coverage is precluded for each of the claims in the underlying action and will grant U.S. Specialty's motion for summary judgment.

**BACKGROUND**

**I.      JEI COMPANY STRUCTURE AND SHARES**

JEI was founded in 1950 by Gerald A. Paulsen ("Jerry Paulsen" or "Paulsen"). (Decl. of Lisa Evon ("Evon Decl."), Ex. B ("Sullivan Compl.") ¶ 12, May 1, 2015, Docket No. 22.)  The company is a closely-held corporation that primarily owns and operates a number of grocery stores, including eighteen Cub Foods franchises, sixteen Save-A-Lot Food Markets, three County Markets, and four Jerry's Foods groceries in Minnesota, Wisconsin, and Florida.  (*Id.*; Decl. of Kent D. Dixon ("Dixon Decl.") ¶¶ 2-3, May 1, 2015, Docket No. 32.)  The company has approximately 4,000 employees. (Sullivan Compl. ¶ 12.)

Jerry Paulsen had three children – Cheryl Sullivan, LuAnn Cornell, and Charlotte Shadduck – to whom he gifted non-voting shares in JEI over time.  (*Id.* ¶ 13.)  He also

gifted non-voting shares to his grandchildren, including Cheryl Sullivan's daughters Kelly and Monica. (*Id.* ¶¶ 13, 15-16.) Paulsen arranged for an estate plan that, upon his death, would make his widow and daughters members of the JEI Board of Directors and give them the opportunity to protect the value of their shares of stock until the shares could be redeemed, at which point they would cease to serve as directors. (Dixon Decl. ¶ 5.)

Paulsen died on April 5, 2013. (Sullivan Compl. ¶ 13.) At the time of his death, Charlotte Shadduck's husband, Robert Shadduck ("Shadduck"), was the President and a director of JEI, and Kent Dixon was Vice President of Finance and a director of JEI. (*Id.* ¶¶ 17-18, 22-23.) Prior to Paulsen's death in April 2013, the JEI Board of Directors comprised just three members: Paulsen, Shadduck, and Dixon. (*Id.* ¶ 24.) After Paulsen's death, as a result of the estate plan, the Board comprised Shadduck, Dixon, Shirley Paulsen (Jerry's 91-year old widow), Sullivan, Charlotte Shadduck, and Melissa Schaefer (one of the Shadducks' daughters). (*Id.* ¶¶ 13, 24.) Paulsen's third daughter, LuAnn Cornell, had sold her shares beginning in 1997 and had no role on the Board. (*Id.* ¶ 28.)

When Paulsen died, the voting and non-voting shares of JEI were distributed across different "wings" of the family and the Gerald A. Paulsen Testamentary Trust ("Testamentary Trust"). Shadduck and Dixon were the trustees of the Testamentary Trust and empowered to vote the shares of the Testamentary Trust prior to the redemption of those shares by JEI. (*Id.* ¶ 33.)

The following table shows the distribution of shares upon Paulsen's death:

| Owner | Non-Voting Shares | Voting Shares |
|---|---|---|
| Monica Sullivan | 1,141 (1.2%) | - |
| Kelly Sullivan | 2,317 (2.4%) | - |
| Cheryl Sullivan | 26,554 (28.06%) | - |
| Shadduck Family[1] | 41,348 (43.7%) | 1 |
| Testamentary Trust | - | 23,268 |

(*Id.* ¶¶ 29-32.)

## II.   CHERYL SULLIVAN UNDERLYING ACTION

Sullivan worked for JEI part-time from 1972 to 1980 and then full-time from 1980 through 2008.  (*Id.* ¶ 31.)  Upon Paulsen's death, she became a temporary member of the JEI Board of Directors under the estate plan.  (Dixon Decl. ¶¶ 5-6.)  Sullivan remained a director from April 2013 to August 2013, but she did not participate in board meetings or vote on corporate matters during that time.  (*Id.* ¶ 6.)  Sullivan's JEI shares were redeemed in August 2013, at which point she ceased to serve as a director.  (*Id.*)

The redemption of Sullivan's shares is the subject of the underlying litigation in this case.  During her time as a director, Sullivan sought information about Robert Shadduck's business practices.  On August 9, 2013, Sullivan and her daughters filed a complaint ("the Sullivan Complaint") against JEI, Shadduck, and Dixon, alleging that Shadduck and Dixon took several wrongful actions against Sullivan and her daughters to ultimately force them to redeem their shares below fair value.  (Sullivan Compl.)  Most notably, the Sullivan Complaint alleged that Shadduck (1) denied Sullivan information

---

[1] The Shadduck family's shares were technically split between Robert Shadduck (11,337 non-voting shares and 1 voting share), Charlotte Shadduck (10,764 non-voting shares), and the Shadduck's three children (6,416 non-voting shares each).  (Sullivan Compl. ¶ 29.)

about JEI relating to prior misconduct by Shadduck; (2) obtained stock options without a required price or date, to enable him to exercise the options once the Shadduck "wing" of the family had the only remaining shares of JEI stock; (3) caused JEI to undervalue its real estate, reducing the value of Sullivan's shares; and (4) arranged for estate planning and trust agreements that would use releases and forfeiture clauses to limit the value of Sullivan's shares and strip her of her rights as a shareholder under both JEI's shareholder agreement and Minnesota state law.  (*Id.* ¶ 3.)  The Sullivan Complaint went on to allege that because Sullivan and her daughters refused to sell back their shares to JEI in the 1990s when LuAnn Cornell acquiesced to JEI's demands to redeem her shares, Shadduck and Dixon had devised a plan to force them to sell their shares at a discounted or reduced value after Paulsen's death.  (*Id.* ¶ 4.)

Sullivan claimed that she raised concerns about Shadduck's actions to Todd Freeman, legal counsel both to JEI as a company and to Shadduck personally, on August 2, 2013.  (*Id.* ¶ 5.)  Freeman responded that it was Sullivan's prerogative to refuse to sell her shares in accordance with the estate planning and trust agreements, but it would result in millions of dollars of taxation and other possible consequences.  (*Id.*)  When Sullivan requested information from Freeman that would support his opinion, and also sought disclosures as to his independence in the matter, Freeman failed to comply.  (*Id.* ¶ 6.)  On August 5, 2013, Sullivan requested an extension from JEI on her family's redemption of their shares to enable Sullivan to obtain the requested information.  (*Id.* ¶ 7.)  JEI refused the extension, prompting Sullivan to file her claim against the company.

(*Id.*)  As described below, JEI ultimately reached a settlement with Sullivan, but U.S. Specialty – JEI's liability insurance carrier – refused to cover the settlement.

## III.    JEI'S LIABILITY INSURANCE POLICY

JEI held a directors' and officers' ("D&O") liability insurance policy ("the Policy") – Policy No. 14-MGU-12-A27558 – through U.S. Specialty from September 20, 2012, through September 20, 2013.  (Dixon Decl., Ex. D ("Insurance Policy") at 2.) Under the Policy, U.S. Specialty agreed to "pay to or on behalf of the **Insured Persons** [or the Insured Organization] **Loss** arising from **Claims** first made against them during the **Policy Period** or Discovery Period (if applicable) for **Wrongful Acts**."  (*Id.* at 4.) Because the Sullivan Complaint is undisputedly a claim made during the policy period for wrongful acts, the essential term of the Policy's coverage provision is "Insured Persons."

The Policy defines "Insured Person" as "any past, present or future director, officer, managing member, manager or **Employee** of the **Insured Organization**, including any person in a position which is the functional equivalent thereof with respect to any entity included within the definition of **Insured Organization** located outside the United States."  (*Id.* at 6.)   "**Employee** means any individual whom the **Insured Organization** compensates by salary, wages and/or commissions and whose labor or service is engaged by and directed by the **Insured Organization**, including seasonal, volunteer and part-time employees."  (*Id.* at 5.)

Aside from the definition of "Insured Person," there are two other significant provisions in the Policy for the purposes of the dispute currently before the Court: the Insured vs. Insured exclusion provision, and the allocation provision.  The Insured vs. Insured exception excludes from coverage under the Policy any claims:

> [B]rought by or on behalf of, or in the name or right of . . . any **Insured Person**, unless such **Claim** is:
>
> (1)     brought and maintained independently of, and without the solicitation, assistance or active participation of, the **Insured Organization** or any **Insured Person**,
>
> (2)     brought or maintained by an **Insured Person** for contribution or indemnity and directly results from another **Claim** covered under this Policy, or
>
> (3)     for an actual or alleged **Employment Practices Wrongful Act**.

(*Id.* at 9.)

The allocation provision addresses situations where the company suffers a loss in connection with a claim that is only partially covered by the Policy.  In this case, the provision is relevant to JEI's argument that the Sullivan Complaint settlement is at least partially covered by the Policy.  This argument is based on the fact that Sullivan's daughters are named plaintiffs in the Sullivan Complaint but neither daughter is an Insured Person under the Policy.  The allocation provision in the Policy treats mixed coverage loss as follows:

> If **Loss** covered by this Policy and loss not covered by this Policy are both incurred in connection with a single **Claim**, either because the **Claim** includes both covered and uncovered matters, or because the **Claim** is made both against **Insureds** and against others not included within the definition of **Insured**, the **Insureds** and the Insurer agree to use their best efforts to determine a fair and proper allocation of all such amounts . . . .

(*Id.* at 14.)

## IV.    THIS ACTION

On August 14, 2013, JEI's insurance broker notified U.S. Specialty of the Sullivan Complaint and sought coverage for JEI under the Policy.  (Dixon Decl. ¶ 18; Evon Decl., Ex. C.)  U.S. Specialty's claims administrator, HCC Global Financial Products ("HCC") sent a letter, dated September 18, 2013, denying coverage for the Sullivan Complaint on the grounds that Sullivan was a director and therefore an "insured person," bringing her claims within the Insured vs. Insured exception to the Policy.  (Evon Decl., Ex. E.)  On September 30, 2013, JEI's insurance broker confirmed with U.S. Specialty that Sullivan had been a JEI director from April 8, 2013 to August 9, 2013.  (*Id.*, Exs. F, G.)

On January 31, 2014, JEI informed U.S. Specialty that they had reached an agreement to settle the claims alleged in the Sullivan Complaint.  (*Id.*, Ex. K at 2.) U.S. Specialty reaffirmed that it would not provide coverage for the Sullivan Complaint, including a settlement or related attorneys' fees, because the claims fell under the Insured vs. Insured exclusion.  (*Id.*, Ex. L.)

JEI filed this action on May 30, 2014, alleging that U.S. Specialty had breached its contractual obligations to indemnify JEI for these types of claims.  (Notice of Removal, Ex. A ("Compl."), June 17, 2014, Docket No. 1.)  On May 1, 2015, both parties filed motions for summary judgment.  (U.S. Specialty Mot. for Summ. J., May 1, 2015, Docket No. 19; JEI Mot. for Partial Summ. J., May 1, 2015, Docket No. 26.)  This case is now before the Court on the parties' cross motions for summary judgment.

**DISCUSSION**

I.     **STANDARD OF REVIEW**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the lawsuit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "To defeat a motion for summary judgment, a party may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue [of material fact] for trial." *Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1113 (8th Cir. 2009) (citing *Anderson*, 477 U.S. at 247-49).

"'The interpretation of an insurance policy, including the question of whether a legal duty to defend or indemnify arises, is one of law'" for a court to decide. *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013) (quoting *Auto-*

*Owners Ins. Co. v. Todd*, 547 N.W.2d 696, 698 (Minn. 1996)).   When interpreting an insurance policy under Minnesota law, courts treat the policy like a contract, "ascertain[ing] and giv[ing] effect to the intentions of the parties as reflected in the terms of the insuring contract." *Id.*

"[U]nambiguous language must be given its plain and ordinary meaning." *Id.* (internal quotation marks omitted).   Courts "do not construe individual words or phrases in insurance policies in isolation.   Rather, when determining if an ambiguity truly exists, [courts] read the policy as a whole . . . ." *Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co., Inc.*, 825 N.W.2d 695, 706 (Minn. 2013).   "Language in a policy is ambiguous if it is susceptible to two or more reasonable interpretations." *Wolters*, 831 N.W.2d at 636.   "[A] court has no right to read an ambiguity into the plain language of a policy in order to provide coverage . . . and, in undertaking such an assessment, the court must fastidiously guard against any invitation to create ambiguities where there are none." *Life Rehab Servs., Inc. v. Allied Prop. & Cas. Ins. Co.*, 616 F. Supp. 2d 924, 935 n.9 (D. Minn. 2007) (internal quotation marks and alterations omitted).

## II.    "INSURED PERSON" AS APPLIED TO CHERYL SULLIVAN

U.S. Specialty argues that the plain language of the Policy's exclusion provision bars coverage for the Sullivan Complaint, because Sullivan is an Insured Person within the meaning of the Policy.   Sullivan was a director and employee of JEI, both of which are positions that qualify her as an "Insured Person" under the Policy.   Further, although the Sullivan Complaint was brought by Sullivan and her two daughters, Sullivan herself

seeks relief under each of the seven counts in the Sullivan Complaint. (*See* Sullivan Compl. ¶¶ 125-51.) Thus, U.S. Specialty claims that no portion of the Sullivan Complaint was "brought and maintained independently of, and without the solicitation, assistance or active participation of . . . any **Insured Person**." (Insurance Policy at 9.) Accordingly, under the plain and unambiguous language of the Insured vs. Insured exclusion, U.S. Specialty maintains that it is not responsible for JEI's loss from the Sullivan Complaint. JEI counters that because Sullivan was a director in name only, because she brought her action against JEI in a shareholder capacity rather than as a director, and because the Insured vs. Insured exclusion applies only to collusive actions, U.S. Specialty must cover the Sullivan Complaint. The Court will address each of these arguments in turn.

## A.    Director in Name Only

JEI argues that Sullivan should not be considered a "director" for the purposes of the Insured vs. Insured exclusion, because she was not a traditional director but rather only a nominal director. She automatically became a director upon her father's death, served for only four months, and never participated in board meetings or voted on corporate matters. Based on this context, JEI maintains that the Policy's language is ambiguous as applied to Cheryl Sullivan and the Court should consider her limited role in order to find that she falls outside the Policy's exclusionary language.

JEI implores the Court to apply the ordinary meaning of the term "director," because it is not a bolded term with a special definition under the Policy. Looking to the

dictionary definition provided in Random House Webster's Unabridged Dictionary 558-59 (2d ed. 1987), JEI argues that "director" means a person who takes action, manages, or controls. JEI insists that a director is one who directs, not merely one who holds the title of director.

Reading the Policy as a whole, *Wolters*, 831 N.W.2d at 636, the Court concludes that JEI's interpretation of the term "director" is unreasonable and that there is no ambiguity in the Policy as to the meaning of the term "director." The "Insured Person" definition in the Policy lists directors along with officers, managing members, managers, and employees. "Employee" is the only one of those terms to receive its own specialized definition in the Policy, and it is not difficult to understand why that might be. One can imagine that uncertainty might arise over, for example, whether an independent contractor qualifies as an employee under the Policy. No uncertainty exists as to the other terms, however. The other terms are all unequivocal titles of positions company personnel might hold. Sullivan did hold such a position, as a named "director" at JEI in 2013.

Nowhere in the Policy does "director" appear to be used narrowly to describe a person who affirmatively conducts leadership activities rather than as a person who holds the title of "director" at the company. The fact that director seems to be used only to describe the position might be expected in a "directors and officers" liability insurance policy. Further, a word is not ambiguous merely because there are multiple common uses of the word. *Bd. of Regents of Univ. of Minn. v. Royal Ins. Co. of Am.*, 517 N.W.2d 888, 892 (Minn. 1994) ("Because a word has more than one meaning does not mean it is

ambiguous.  The sense of a word depends on how it is being used; only if more than one meaning applies within that context does ambiguity arise.").  Here, even if "director" can generally be used in more ways than as a person with the title "director," nothing in the Policy indicates that it holds JEI's "action taking" meaning in this context.  Indeed, by JEI's reasoning, for example, a person with the job title "Manager" who turns out to be lazy or particularly ineffective at supervising operations could theoretically fall outside the scope of the Insured vs. Insured exclusion, which the Court finds is likely contrary to the intentions of the parties when the Policy was written.

In *Miller v. ACE USA*, 261 F. Supp. 2d 1130, 1138-39 (D. Minn. 2003), the court addressed a similar argument to the one JEI makes now.  The policy in *Miller* precluded coverage for claims brought by "directors, officers, or employees of the Company."  *Id.* at 1138.  The plaintiff sought to limit the scope of "employees" covered under the exclusion, just as JEI attempts to limit the scope of "directors" in this instance.  The specific language from the *Miller* policy stated that "Insured" persons included any "directors, officers, or employees of the Company, and . . . the functional equivalent to directors or officers of the Company in the event the Company is incorporated or domiciled outside the United States."  *Id.* (internal quotation marks omitted).

The plaintiff argued that in the context of the Policy and the underlying complaint, the Insured vs. Insured exclusion should be understood only to apply to directors, officers, and those employees "acting as 'the functional equivalent' of directors and officers."  *Id.*  In making this argument, the plaintiff encouraged the court to take into account traits or actions of each category listed when determining whether a particular

individual would fall within the scope of the exclusion.  The court in *Miller* rejected the plaintiff's construction, explaining that even if such exclusionary clauses can be narrowly interpreted in a limited set of circumstances, "where such exclusions are clear and susceptible to only one fair interpretation, courts generally apply them pursuant to their plain terms." *Id.* at 1139.

In this case, the Insured vs. Insured exclusion contains no qualifier such that a director only counts as an "Insured Person" if he or she takes particular actions or has been a director for a certain period of time.  Instead, the plain language is unequivocal that "**any** past, present or future director" constitutes an "Insured Person" under the Policy.  (Insurance Policy at 6 (emphasis added).)  Given that the exclusionary language of the Policy is "clear and susceptible to only one fair interpretation," *Miller*, 261 F. Supp. 2d at 1139, the Court will apply the term "director" pursuant to its plain terms: a company official holding the title of "director," irrespective of actions taken while in that role.

### B.      Sullivan Complaint Brought in Shareholder Capacity

JEI also argues that when Sullivan requested information about Shadduck and Freeman in August 2013, and subsequently filed the Sullivan Complaint, she did so in her capacity as a shareholder concerned about the value of her shares, not as a JEI director or employee.  An individual whose only tie to the company is as a shareholder is not covered by the Insured vs. Insured exclusion.  As a result, JEI insists that the exclusion

should not apply where Sullivan's actions were undertaken in her capacity as a shareholder rather than as an Insured Person.

The Policy lists three circumstances in which the Insured vs. Insured exclusion would not apply to a director, officer, managing member, manager, or employee.  In each of the exceptional circumstances, even though the plaintiff in the underlying action would qualify as an Insured Person under the Policy or is bringing a claim on behalf of an Insured Person, the company would still receive coverage for the action.  The three circumstances are: (1) wrongful employment actions, such as retaliation, discrimination, sexual harassment, or wrongful termination; (2) actions brought for contribution or indemnity for another claim covered under the Policy; and (3) claims brought by a non-insured person on behalf of an Insured Person, "brought and maintained independently of, and without the solicitation, assistance or active participation of," the Insured Person or organization.  (Insurance Policy at 9.)

Notably, a situation in which an otherwise Insured Person brings a claim primarily or solely in his or her capacity as a shareholder is not one of the three exceptions.  Indeed, courts have frequently upheld Insured vs. Insured exclusions in the context of shareholder actions.  The Ninth Circuit has allowed such actions to proceed where "the exclusion [clause] contains no capacity limitation, either in the clause itself or by reference to any other part of the policy," and the definition of an insured person extends, as in the JEI Policy, "to both **past** and **future** directors[, which] suggests that it is not [so] limited" to cases where directors sue in their capacity as directors.  *Am. Med. Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 244 F.3d 715, 722-23 (9th Cir. 2001) (finding that

"[n]othing in the policy specifies that a former director filing a claim . . . must also have acted in his capacity as a director in order to trigger the 'insured-versus-insured' exclusion"). Likewise, in *Home Federal Savings & Loan Association of Niles v. Federal Insurance Co.*, No. 06-3053, 2007 WL 2713060 (N.D. Ohio Sept. 14, 2007), the court explained:

> By its terms, the insured v. insured exception applies to [the underlying plaintiff]'s claims. [He] is "an insured" within the policy terms because he was a past director. [His] status as a shareholder and not a former director in the underlying litigation does not change the result. Nothing in the policy's terms distinguishes among the various capacities an insured could bring a claim. It simply excludes claims brought or maintained by an insured. Therefore, the exclusion governs regardless of the capacity in which the insured sues.

*Id.* at *4 (citations omitted).

In *Ideal Dev. Corp. v. U.S. Liability Ins. Co.*, the court rejected the plaintiffs' argument that "the Court should read into the policy a requirement that a claim brought by an insured in some other capacity – as a shareholder or a disgruntled employee, for example – does not fall within the insured vs. insured exclusion." (Aff. of Robert L. McCollum, Ex. 1 (*Ideal Dev. Corp. v. U.S. Liab. Ins. Co.*, Civil No. 10-772 (PAM/RLE), July 13, 2010 Mem. and Order ("Ideal Dev. Corp. Order") at 5), May 1, 2015, Docket No. 24.) The court explained that the straightforward policy did "not apply to any claims brought by an insured," irrespective of the capacity in which the claims were brought (i.e., whether as a director or as a shareholder). (*Id.*) The court concluded that "Plaintiffs' interpretation of the policy language [to include a capacity requirement] is

nonsensical.  The exclusion unambiguously excludes all lawsuits brought by, on behalf of, or at the behest of, an insured."  (*Id.*)

The policy language in *Ideal Development Corp.* reflected the Insured vs. Insured exclusion in the Policy in this case, offering coverage for claims brought by an insured for "contribution or indemnity which is part of or results directly from a Claim which is otherwise covered by the terms of this Policy" or for claims on behalf of an insured "brought and maintained totally independent of, and without the solicitation, assistance, participation or intervention of, any of the Insureds."  (*Id.* at 3-4.)  Based on these enumerated exceptions, the court in *Ideal Development Corp.* explained that "[t]he clear implication of this subsection is that other lawsuits, not brought independently of an insured, are excluded from coverage." (*Id.* at 5.)  Therefore, the court determined that the exclusion applied.

JEI urges the Court to instead follow a 1987 District of Minnesota decision, in which the court declined to apply an insured vs. insured exclusion.  *Conklin Co. v. Nat'l Union Fire Ins. Co.*, No. 86-860, 1987 WL 108957, at *2 (D. Minn. Jan. 28, 1987).  In *Conklin*, however, the court acknowledged that it had "found no reported caselaw and little commentary interpreting the kind of 'insured v. insured' exclusionary" provision involved in the case.  *Id.*  As disputes under these types of exclusions have become more frequently litigated, courts – including the District of Minnesota in *Ideal Development Corp.* – have adopted the approach that capacity does not matter, so long as an insurance policy does not include a qualification that a claim must be brought in a particular capacity.

In this case, the Insured vs. Insured exclusion eliminates coverage for any claim "brought by or on behalf of, or in the name or right of, . . . any Insured Person." (Insurance Policy at 9.)  The language includes no qualifier that the claim must be brought exclusively to protect rights that person has in their Insured Person capacity. Accordingly, the Court will follow the weight of authority on this issue and conclude that the Sullivan Complaint is not subject to coverage solely because the interests Sullivan sought to protect were predominately shareholder interests.

## C.    Collusive Actions

JEI next argues that the Insured vs. Insured exclusion should not apply in this case because it is limited to collusive actions.  JEI maintains that these provisions are included in policies "to prevent friendly or collusive lawsuits where a company tries to convert its [directors and officers liability insurance] policy into a corporate errors and omissions policy." *Conklin*, 1987 WL 108957,  at *3.  The fear driving these provisions is that "an insured company might seek to force its insurer to pay for the poor business decisions of its officers or managers." *Twp. of Center v. First Mercury Syndicate, Inc.*, 117 F.3d 115, 119 (3d Cir. 1997).  In this respect, the purpose of an insured vs. insured provision would be to "prevent[] a corporation from suing its own directors or officers to obtain the benefits of its own [directors and officers liability insurance] policy coverage." *Conklin*, 1987 WL 108957, at *2.  JEI argues that because the Sullivan Complaint is not a collusive action, the Insured vs. Insured exclusion should not apply.

"To be sure, there is a genuine split of authority" on the application of insured vs. insured exclusions in non-collusive actions. *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 412 F.3d 1224, 1229 (11th Cir. 2005). Several cases from other districts have looked beyond the text of the policy to the rationale behind certain provisions and declined to apply an insured vs. insured exclusion where the underlying action was not collusive. *See, e.g.*, *Fid. & Deposit Co. of Md. v. Zandstra*, 756 F. Supp. 429, 431 (N.D. Cal. 1990) (refusing to apply an insured vs. insured exclusionary provision where the "obvious intent behind the 'insured v. insured' exclusion is to protect [the insurance company] against collusive suits among [an insured company] and its directors and officers"); *see also Megavail v. Ill. Union Ins. Co.*, No. 05-1374, 2006 WL 2045862, at *1-*2 (D. Ore. July 19, 2006).

Other courts, however, have not examined the purpose behind the provision where the text of the provision is unambiguous. *See, e.g.*, *Sphinx Int'l*, 412 F.3d at 1229-30 (declining to consider the rationale behind the exclusion where the policy was "unambiguous"); *Powersports, Inc. v. Royal & Sunalliance Ins. Co.*, 307 F. Supp. 2d 1355, 1358-59 (S.D. Fla. 2004) (applying an insured vs. insured exclusion based on the plain language of the policy and opting not to conduct an investigation of the underlying purpose or application of other rules of construction). In *Level 3 Communications, Inc. v. Federal Insurance Co.*, 168 F.3d 956 (7th Cir. 1999), the Seventh Circuit explained that the risk with inquiring into the purpose of an exclusionary provision when the text is clear on its face is that it undermines the stability created for both the insured and the insurance company by using strict exclusionary language. *Id.* at 958 ("The fallacy in the

[*Zandstra* and *Township of Center* approach] is in confusing a rule with its rationale, or in

turning a rule into a standard by reference to its rationale.  There is a tradeoff between

clarity and ease of application, on the one hand, and a tight fit between a legal or

contractual norm and its purpose, on the other.").   The court found that the type of

rationale investigation conducted in *Zandstra* and *Township of Center* created too much

uncertainty where the goal was clarity, concluding:

> [W]e do not think it follows that the rule barring coverage when an insured
> is suing another insured collapses into a standard that would require the
> district court to inquire into the collusive potential of the securities suit or
> the bitterness of the feelings between [the plaintiff in the underlying action]
> and the defendants in that suit.  It is one thing to carve a hard-edged
> exception, necessary to avoid absurdity, say for the case in which an
> "Insured" is an unnamed class member; it is another thing to replace the
> hard-edged rule of "Insured versus Insured" with a mushy, messy standard
> that would be hell for an insurance company to apply when asked to
> indemnify its insured.

*Id.* at 959.

The District of Minnesota squarely addressed this issue in *Miller* and reached the

same conclusion as the courts in *Level 3 Communications*, *Sphinx International*, and

*Powersports*.  In *Miller*, the court was faced with an insured vs. insured clause, and the

plaintiff argued that *Township of Center* required an "evaluat[ion of] the legitimacy of the

underlying action" to determine whether it was collusive.  *Miller*, 261 F. Supp. 2d at

1139.  Only for collusive actions, the plaintiff maintained, would a claim be barred by the

insured vs. insured exclusion.  *Miller*, 261 F. Supp. 2d at 1139.  The court disagreed,

concluding that "[w]hile this position finds some support in decisions involving insured

v. insured clauses, **where policy language is explicit and unambiguous, the court may**

- 20 -

**not create ambiguity to afford coverage**." *Id.* (emphasis added).  The court accordingly refused to "insert [the plaintiff's] suggested modification into the unambiguous Policy definitions, under which [the plaintiff in the underlying action], as a former employee, is explicitly defined as an 'Insured.'" *Id.*

The Court concludes that the analysis in *Miller* is the most sensible way to evaluate this issue in light of Minnesota's stringent approach to unambiguous insurance policy and contractual language.  The language of the Insured vs. Insured exclusion in this case is unambiguous and does not refer to collusive actions.  In such a case, "a court has no right to read an ambiguity into the plain language of a policy in order to provide coverage . . . and, in undertaking such an assessment, the court must fastidiously guard against any invitation to create ambiguities where there are none."  *Life Rehab Servs.*, 616 F. Supp. 2d at 935 n.9 (internal quotation marks and alterations omitted).  Because the "policy language is explicit and unambiguous" here, the Court will not create ambiguity in order to look behind the plain text to the rationale for its inclusion in the policy, thereby potentially affording coverage.  *Miller*, 261 F. Supp. 2d at 1139.  Thus, the Court concludes that the Insured vs. Insured exclusion applies to Cheryl Sullivan.  The Court will grant U.S. Specialty's motion for summary judgment and deny JEI's motion for partial summary judgment as those motions relate to Cheryl Sullivan.

## III.   APPLICABILITY OF THE INSURED VS. INSURED EXCEPTION TO SULLIVAN'S DAUGHTERS' CLAIMS

JEI argues that even if the Insured vs. Insured exclusion bars coverage as to Sullivan, the same does not hold true for her daughters, who were merely shareholders

and not "Insured Persons" under the Policy.  The Policy includes an allocation provision under which the insurer and insureds agree to attempt to allocate loss amounts if a settlement or judgment connected to single claim involves both covered and not covered loss.  (Insurance Policy at 14.)  JEI maintains that because Sullivan's daughters are not insured under the Policy, U.S. Specialty may not avoid coverage for their claims under the Insured vs. Insured exclusion, and must allocate the Sullivan Complaint settlement accordingly.

JEI's argument is not without support.  In *Level 3 Communications*, for example, the Seventh Circuit found that an allocation provision allowed coverage for non-insured loss on a claim for which there was no coverage for insured loss.  *Level 3 Commc'ns*, 168 F.3d at 960.  In that case, there were six plaintiffs all raising similar claims in a securities fraud action, only one of whom was an insured.  *Id.*  Assuming that each of the plaintiffs "shared in the settlement in proportion to their shareholdings," the court found that the allocation provision allowed for coverage of the five non-insured plaintiffs.  *Id.*  In other words, the insurer's obligation to defend remained intact, minus the portion of the loss not covered by the insurance policy.  The Seventh Circuit reaffirmed its position in *Miller v. St. Paul Mercury Insurance Co.*, 683 F.3d 871, 878 (7th Cir. 2012), where the court explained that the existence of an allocation provision in the policy "gives us a fairly clear answer [to the question of whether coverage applies to claims brought by both insured and non-insured plaintiffs]: coverage is not all-or-nothing based on [which group is in the majority on a claim].  Coverage is allocated based on 'the relative legal exposure of the parties to covered and noncovered matters.'"  *Id.*; *see also Fed. Ins. Co. v.*

- 22 -

*Infoglide Corp.*, No. 05-189, 2006 WL 2050694, at *5-*6 (W.D. Tex. July 18, 2006) ("[T]he inclusion of an 'insured' as a plaintiff, where there are also plaintiffs who are not 'insureds,' does not bar coverage of the claim.").

Although courts in this district have previously addressed disputes over joint insured and non-insured claims in the context of exclusionary provisions, the cases are of limited guidance here because of significant factual distinctions.  For example, this issue was one of first impression in this district in 2007.  *See Westchester Fire Ins. Co. v. Wallerich*, 527 F. Supp. 2d 896, 903 (D. Minn. 2007) (noting that "no cases in Minnesota [have] address[ed] whether an 'Insured v. Insured' exclusion bars coverage for an underlying lawsuit brought by both an insured and non-insured plaintiff"), *aff'd in part, rev'd in part*, 563 F.3d 707 (8th Cir. 2009).  In *Westchester*, the claim at issue was one brought jointly by an insured person and his spouse.  The court concluded that the insured's spouse constituted a non-insured person under the policy and found that coverage was entirely barred because of the presence of an insured party among the plaintiffs.  *Id.* at 904-05.

In *Westchester*, however, the insurance policy contained no allocation clause, so the court did not consider whether coverage for loss might be divided between insured and non-insured plaintiffs.  *See id.* at 904.  The presence of an allocation clause in the Policy at issue here is of potential significance because it suggests that the Policy drafters envisioned possible situations in which claims could receive partial coverage.  Thus, while *Westchester* signals the first attempt by the District of Minnesota to resolve a

dispute about joint insured and non-insured claims, it is of little assistance to the Court in resolving this particular dispute.

The district again addressed the question in 2010, in a case where the insurance policy contained an exclusion clause very similar to the one in the JEI Policy. *Thomas Eng'g Co. v. Twin City Fire Ins. Co.*, No. 10-902, 2010 WL 4979106 (D. Minn. Dec. 2, 2010). As in the JEI Policy, the insurance policy in *Thomas Engineering* included an allocation clause for claims "includ[ing] both covered and uncovered matters" or "against both covered and uncovered parties." *Id.* at *6 & n.8 (internal quotation marks omitted). Unlike *Westchester* or this case, however, the court faced a coverage dispute where only a single plaintiff was involved. The *Thomas Engineering* plaintiff was an insured who brought some derivative claims on behalf of the company, which was insured under the Policy, and some claims on his own behalf in a non-insured capacity. *Id.* at *4. In light of the fact that the plaintiff was an insured individual bringing multiple claims in distinctly different capacities, the court found no ambiguity and concluded that the policy that would allow partial coverage for the non-insured claims. *Id.* at *6.

Although *Thomas Engineering* applied an allocation clause to insured and non-insured claims, the operative distinction in that case was not insured and non-insured **plaintiffs** bringing the same claim together. Rather, the Court's focus was on splitting coverage for entirely distinct **claims**, brought by a single plaintiff whose insured status was not disputed. This case is just the opposite. The Sullivan Complaint presents a hybrid of *Westchester* and *Thomas Engineering*: an insurance policy with an allocation

clause, where one set of claims in the underlying action is jointly brought by separate insured and non-insured plaintiffs.

It is in identifying this hybrid stature that the resolution of the allocation issue in this case becomes clear.  Although Sullivan's daughters are non-insured persons under the Policy, each and every claim in the Sullivan Complaint is also joined by Sullivan.  There are no claims – as in *Thomas Engineering* – brought by a non-insured plaintiff on his or her own behalf.  Put differently, there are no claims that Sullivan's non-insured daughters assert wholly "independently of, and without the solicitation, assistance or active participation of" Sullivan.  (Insurance Policy at 9.)  Because the Insured vs. Insured exclusion only allows coverage for claims related to Insured Persons if they are brought independently, and without the active participation, of the Insured Person, the Court concludes that none of the claims in the Sullivan Complaint are subject to coverage under the Policy.

Unlike the six plaintiffs with even numbers of shares in *Level 3 Communications*, Sullivan is unequivocally the driving force behind the Sullivan Complaint – she owned 28% of JEI's non-voting shares, as opposed to the approximately 3% owned by her daughters.  Further, it was Sullivan who held a position on the board of directors, Sullivan who sought information about Shadduck's business practices, and Sullivan who requested an extension of the share redemption deadline immediately prior to the filing of the Sullivan Complaint.  Even if the Sullivan Complaint were not framed as joint claims, it is not plausible that any of the claims in the complaint would be free of Sullivan's participation and assistance.  As a result, the Court finds that there are no entirely non-

insured claims to which the allocation clause in the Policy would apply here. Consequently, the Court finds that Sullivan's daughters' claims are not subject to coverage under the Policy.  The Court will grant U.S. Specialty's motion for summary judgment and deny JEI's motion for partial summary judgment to the extent those motions relate to Sullivan's daughters, Kelly and Monica.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein **IT IS HEREBY ORDERED** that:

1.      Defendant's Motion for Summary Judgment [Docket No. 19] is **GRANTED**.

2.      Plaintiff's Motion for Partial Summary Judgment [Docket No. 26] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  September 22, 2015
at Minneapolis, Minnesota.

                                          s/ *John R. Tunheim*
                                          _____
                                          JOHN R. TUNHEIM
                                          Chief Judge
                                          United States District Court